IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES SURETY COMPANY,   )
                                      )
          Plaintiff,          )
                                        )
     v.                  )     Case No. 11 C 7480
                                        )
STEVENS FAMILY LIMITED       )
PARTNERSHIP, et al.,           )
                                        )
         Defendants.      )

**MEMORANDUM OPINION AND ORDER**

United States Surety Company ("Surety") brought this contractual action against Stevens Family Limited Partnership and four individual defendants (collectively the "Partnership"[1]) to seek enforcement of a general indemnity agreement ("Agreement") entered into by the parties. More precisely Surety requests both indemnification against certain claims and specific performance of a related collateral security provision, both in connection with payment and performance bonds issued by Surety on Partnership's behalf.

Surety now asks for judgment on the pleadings under Fed. R. Civ. P. ("Rule") 12(c). As explained here, Surety's pleading-based motion is denied as to the first of those contentions but granted as to the second.

**Standards of Construction**

As with Rule 12(b)(6) motions, Rule 12(c) motions call for the factual allegations in a

---

[1] That usage is employed purely for convenience -- one of the four individual defendants is not in fact a member of the Partnership, as are the other three.

complaint to be viewed in the light most favorable to the nonmovant plaintiff, drawing all

reasonable inferences in its favor (Emergency Servs. Billing Corp. v. Allstate Ins. Co., 668 F.3d

459, 464 (7th Cir. 2012)).  Hence for purposes of the current motion assertions in Surety's First

Amended Complaint ("Complaint") will be considered untrue if Partnership has denied those

assertions in its Answer.  Moreover, Partnership's Rule 8(b)(5) disclaimer that it lacks sufficient

knowledge or information to form a belief about any of Surety's assertions has the effect of a

denial.[2]  What follows is a summary of the facts as perceived through the lens of the Rule 12(c)

standards.

### Background Facts[3]

Partnership owns a construction company -- Architectural Specialties Trading Company,

Inc. ("Architectural Specialties") -- that specializes in architectural millwork (Ans. ¶9).  Two

construction projects are relevant to this action, each of them including Architectural Specialties

as a subcontractor (id. ¶¶14, 16).  First, in May 2008 Architectural Specialties contracted to help

build an armed forces retirement home--a project  run by general contractor W.G. Yates & Sons

Construction Co. ("Yates") (id. ¶14).  Second of the projects was one to build the Dental

Sciences Building for the University of North Carolina at Chapel Hill -- an undertaking that

began in June 2009 and was led by BE&K Building Group, LLC ("BE&K") (id. ¶16).  Both

---

[2]  It should of course be understood that the application of those principles involves no factual findings or implications by this Court.  If for example it ultimately turns out that any of those denials or disclaimers lacked subjective or objective good faith, Rule 11(c) could come into play.

[3]  Surety's Complaint will be cited "Compl. ¶ --," while Partnership's Answer will be cited "Ans. ¶ --."  Surety's memorandum in support of its Rule 12(c) motion will be cited "S. Mem. ¶ --," and Partnership's response will be cited "P. Mem. ¶ --."  Citations to exhibits attached to those documents will add "Ex. --" to the appropriate document designation.

projects required Architectural Specialties to provide its general contractors with payment and

performance bonds (id. ¶¶15, 17). Partnership purchased those bonds (together the "Bonds")

from Surety -- Bond No. 10000825985 was issued to Yates in the penal sum of $1,368,000, and

Bond No. 1000825982 was issued to BE&K in the penal sum of $1,251,234 (id.).

In conjunction with Partnership's purchase of the Bonds, the parties executed the

Agreement, which includes this indemnification provision (Agreement ¶2):

> In consideration of the execution and delivery by the Surety of a Bond or any
> Bonds on behalf of the Principal [Architectural Specialties], the Undersigned
> [Partnership as defined at the outset of this opinion] agree to indemnify and hold
> the Surety harmless from and against any and all demands, liabilities, losses,
> costs, damages, attorneys' fees and expenses of whatever kind or nature together
> with interest thereon at the maximum rate allowed by law, which arise by reason
> of, or in consequences of, the execution by the Surety of any Bond on behalf of
> the Principal and whether or not the Surety shall have paid any sums in partial or
> complete payment thereof . . . .

That provision is coupled with this collateral security provision (Agreement ¶6):

> If a claim is made against Surety, whether disputed or not, or if Surety deems it
> necessary to establish a reserve for potential claims, and upon demand from
> Surety, the Undersigned shall deposit with Surety cash or other property
> acceptable to Surety, as collateral security, in a sufficient amount to protect Surety
> with respect to such claim or potential claims and any expense or attorneys'
> fees. . . . If said collateral, or collateral previously deposited with Surety, is
> deemed insufficient by Surety, the Undersigned agrees to deposit additional or
> substitute collateral in an amount and type acceptable to Surety. This may include
> the Surety's demand for cash collateral in substitution for Trust Deed collateral.
> The Undersigned further agrees to reimburse the Surety for all attorney's fees,
> costs, expenses, etc., including any in-house attorney's fees, in the Surety's defense
> of any action brought by the Undersigned or anyone to effect the return or
> turnover of the collateral.

Surety alleges that it has received claims on both Bonds (Compl. ¶18-19). It asserts that

it has incurred $7,931.42 of claim investigation costs in connection with the Retirement Home

Project (id. 18). But Partnership responds that it does not have sufficient information to

- 3 -

determine whether that is accurate (Ans. ¶18).  As to the Dental Building Project, Partnership

admits that BE&K sent Surety several letters discussing Architectural Specialties's alleged

default as well as a claim on the Bond issued in connection with the Project (id. ¶19).  Included

in those letters was a June 2011 "Notice of Default" letter, a July 2011 "Failure to Cure Default"

letter and an August 2011 letter demanding payment of $439,030 for costs incurred due to

Architectural Specialties's alleged default (id.).  Partnership admits that BE&K sent it those

letters but maintains that it never defaulted (id.).

Surety avers that in response to BE&K's claim it first demanded collateral security in the

amount of $100,000 (Compl. ¶25), and it later supplemented that demand with a request for an

additional $400,000 (id. at ¶26).  Although Partnership's Ans. ¶¶25-26 deny its having received

those demands for collateral, its response to Surety's motion puts the lie to that denial, for its

P. Mem. ¶¶4-7 state that it did offer up collateral in response to Surety's demands.[4]  Partnership

says there that it offered Surety collateral in the form of  two real estate parcels with a total equity

exceeding the $500,000 demanded by Surety (id. ¶6), but that Surety rejected that collateral due

to the existence of a contested lien on the offered properties (id.).  For its part Surety has simply

alleged that Partnership failed to post collateral in a manner consistent with the Agreement

(Compl. ¶23).

This action was brought based on Surety's belief that it was not properly indemnified and

collateralized under the terms of the Agreement.  On consideration of Surety's motion for

judgment on the pleadings, this Court holds that Partnership's admission referred to in the

---

[4] As n.2 has forecast, that reversal of position would appear to be a prime candidate for a
Rule 11(c) sanction.  It can only be hoped that is not a harbinger of more to come.

preceding paragraph entitles Surety to a judgment as a matter of law on its demand for collateralization but that its motion for current enforcement of the Agreement's indemnification provisions must be and is denied.

**Controlling Law**

Surety's contract action was brought pursuant to this Court's diversity jurisdiction, so that Illinois law -- including its choice-of-law principles -- applies (Assaf v. Trinity Med. Ctr., 696 F.3d 681, 685 (7th Cir. 2012)). Application of California substantive law is called for by a clear choice-of-law provision in Agreement ¶12.24. Partnership pointed to that fact in response to Surety's citation to Illinois caselaw in its original memorandum (P. Mem. ¶9), and Surety replied by including California caselaw in its reply memorandum. Because Illinois' choice-of-law doctrine would honor the Agreement's provision, California law controls.

California regularly recognizes indemnity contracts in favor of sureties (First Nat'l Ins. Co. v. Hunt, No. Civ. 10-1449, 2011 WL 2173765, at *3 (E.D. Cal. June 2), citing Fid. & Deposit Co. of Md. v. Whitson, 187 Cal. App.2d 751, 756 (1960)). And as with all contracts, California law seeks to give effect to the contracting parties' intentions (Myers Bldg. Indus., Ltd. v. Interface Tech., Inc., 13 Cal.App 4th 949, 968 (1993)).

Generally speaking, California requires that four elements be shown for a plaintiff to succeed in an action for breach of an indemnity agreement: "the existence of an indemnity agreement, the plaintiff's performance under the agreement, breach of the agreement, and damages." (First Nat'l Ins., 2011 WL 2173765, at *3). Here it is beyond peradventure that the first two of those elements have been fulfilled. What this Court must therefore determine is whether it is clear that (1) Partnership had an obligation to collateralize Surety, indemnify Surety

or both under the circumstances, (2) that Partnership failed to fulfill its obligation or obligations

and (3) what damages, if any, resulted.

### Indemnification Provision

Surety's Complaint asserts a right to indemnification for two different types of costs:

(1) indemnification for expenses and fees incurred while "defending, investigating and evaluating

claims against the bonds" and (2) indemnification for losses it may incur "through the payment or

settlement of claims [under the bonds]" (Compl. ¶30).  As to the first request for indemnification,

Partnership's Rule 8(b)(5) disclaimers (see Ans. ¶¶18, 30, 31) have effectively denied that such

expenses and fees exist, so that indemnification for costs already incurred cannot be awarded at

this stage of the litigation.[5]  More discussion is required for the second request for

indemnification -- that based on any payment or settlement of the claims made by Yates and

BE&K.

Surety's Complaint does not assert -- or even suggest -- that it has either paid or settled

the claims made by Yates and BE&K.  It therefore seems to argue that it can recover through

indemnification even before it has experienced a loss -- a notion wholly at odds with Cal.  Civ.

Code § 2778, which states in pertinent part:

> In the interpretation of a contract of indemnity, the following rules are to be
> applied, unless a contrary intention appears:
>
> 1.  Upon an indemnity against liability, expressly, or in other equivalent terms, the
> person indemnified is entitled to recover upon becoming liable;

---

[5]  Agreement ¶2 clearly covers such expenses, and proof of their existence will surely lead
to indemnification.  Once again, does Partnership have any justification for not having honored
the current small claim on the Retirement Home Project bond now?

2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof . . . .

14A Cal. Jur. 3d Contrib. & Indemnification § 52 (2012) explains the difference between those

two types of indemnification:

The distinction is between contracting that an event will not happen and contracting to indemnify against the consequences of the event if it should happen.

True enough, Agreement ¶2 requires that Surety must be held "harmless from and against

any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . whether

or not the Surety shall have paid any sums in partial or complete payment thereof." But an

appreciation of the distinction between a hold-harmless provision and an indemnification

provision (which connotes making the indemnitee whole for damages it has sustained, as

required by the California fourth element of "resulting damages" and the California Civil Code)

points the way to the correct result here.

While the parties agree that BE&K has made a claim on the Bonds in connection with its

Project, it is not yet clear whether that claim will actually be sustained so as to require payment.

Partnership says that it never defaulted against BE&K, so that the claim is not valid (Ans. ¶19).

For its part, Surety's Complaint ¶30 (emphasis added) states only that it "may incur losses

through the payment or settlement of claims."

Although in the end Surety has "sole and absolute discretion to determine whether any

claims under any Bond or Bonds shall be paid, settled or defended against" (Agreement ¶3.1), it

is too early in the day for Surety to look to that provision -- and in any event that does not justify

a current requirement of payment of the claim by the Partnership just because Surety might

otherwise ultimately have to pay on the claim. That of course is precisely why the Partnership's

hold-harmless obligation is implemented by the Agreement's collateral security provision. This

opinion turns, then, to a consideration of that provision.

**Collateral Security Provision**

Surety bargained for, and Partnership agreed to, Surety's right to demand collateral

security not because they were remarkably prescient but rather because the problem posed here is

a common one. Provisions of that nature are both recognized and enforced in California (Safeco

Ins. Co. of Am. v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984), citing Gen. Ins. Co.v. Howard

Hampton Inc., 185 Cal. App. 2d 426 (1960)).

While the breach of such a collateral security provision cannot be rectified through the

traditional legal remedy of monetary reimbursement (remember that a surety will not have

suffered an actual loss at the point where collateralization, as opposed to reimbursement, is

appropriate), California courts have employed the equitable remedy of specific performance to

enable sureties to receive the benefit of their collateral-security bargains (Safeco, 739 F.2d at

433).[6] That remedy allows courts to demand that indemnitors collateralize indemnitees on the

premise that ultimately unused security must be returned (see id.). Under the Agreement's

collateral security provision Surety is entitled to receive appropriate collateral security even

though the pleadings do not establish that it has yet suffered an actual loss (Travelers Cas. & Sur.

Co. v. Desert Gold Ventures, LLC, No. CV 09-4224, 2010 WL 5017798, at *6 (C.D. Cal.

Nov. 19)).

---

[6] That Safeco opinion, which reversed as "clearly wrong" a district court's reading of a
virtually identical indemnification and collateralization agreement in favor of a surety, could well
have been written for this case.

All that the Agreement requires to trigger Surety's right to demand collateral is a "claim made against Surety" (Agreement ¶6). Partnership does not deny that BE&K made a $439,000 claim on the Bond on its Project (Ans. ¶19), bringing that provision facially into play. Partnership nonetheless argues that it was not obligated to meet Surety's collateral demands for two reasons: (1) Surety had a duty to investigate whether BE&K's claim was legitimate before asking for the full amount of the claim as collateral and (2) Partnership assigned all of its property to Surety in the Agreement, thus providing plenty of security and obviating the need for collateral.

Partnership's first argument is clearly bankrupt. Surety unequivocally had no obligation to examine the validity of BE&K's claim before demanding collateral to cover its possible losses. Under Agreement ¶6 collateral can be demanded in an amount sufficient to cover a claim and additional costs so long as the "claim is made against Surety, whether disputed or not." It matters not whether Partnership believes the claim to be bogus -- collateral must be provided to protect Surety against the possibility that the claim is legitimate (Travelers Cas. & Sur., 2010 WL 5017798, at *6). Here BE&K sent Surety several letters asserting that Architectural Specialties defaulted on its subcontract, which gave Surety plenty of reason to believe that it might be liable to BE&K for the full amount claimed.

Partnership's second argument is likewise flat-out foreclosed by the clear language of the Agreement. It is true that the Agreement's assignment provision, which assigns to Surety all of Partnership's rights in its real and personal property, provides Surety with a level of security. But if Partnership were correct, that would read the collateral security provision out of the Agreement entirely as wholly meaningless -- an impermissible way to read a contract. Simply put, the

Agreement provides Surety with two levels of security, a belt-and-suspenders approach for which Surety bargained and that Partnership could have challenged before -- but not after -- the contract was arrived at by mutual agreement.

Partnership next argues that even if Surety had a right to demand $500,000 in collateral in response to BE&K's claim, Partnership met its obligations by offering Surety a stake in two pieces of real property. Partnership maintains that Surety's rejection of that offer amounted to a demand for cash collateral, which Partnership apparently believes to be illegitimate under the Agreement. Two separate clauses in the Agreement's collateral security provision torpedo that argument.

First, Agreement ¶6 (emphasis added) states that collateral must take the form of "cash or other property <u>acceptable to Surety</u>." It was up to Surety to determine whether a non-cash tender was adequate to the task, and because the real property offered as collateral was subject to a bank lien (a fact admitted by P. Mem. ¶6), Surety was well within its rights to demand a different form of collateral. Second, Surety's right to demand cash when it deems non-cash tender unsatisfactory was explicitly contemplated by the parties. To repeat the relevant portion of the collateral security provision:

> If said collateral, or collateral previously deposited with Surety, is deemed insufficient by Surety, the Undersigned agrees to deposit additional or substitute collateral in an amount and type acceptable to Surety. This may include the Surety's demand for cash collateral in substitution for Trust Deed collateral.

Partnership's final argument is that the effective demand for cash collateral will force it to liquidate assets, which would do irreparable harm to Partnership, so that this Court should not

- 10 -

require that Partnership collateralize Surety with cash.[7]  But Partnership identifies no authority

that even suggests, let alone holds, that a contractual provision can be struck or altered just

because its implementation will cause one of the contracting parties irreparable harm.  If

Partnership cannot tender satisfactory non-cash collateral, Surety has an unfettered right to call

for cash.  Partnership's displeasure with the results of a deal that it made freely cannot serve as

the justification for altering that deal.

In sum, Partnership has failed to provide adequate collateral to protect Surety under the

terms of the Agreement.  And that failure entitles Surety to specific performance of the

Agreement's collateral security provision, even at the pleading stage.

It is true that requiring specific performance of a collateral security provision is an

equitable remedy (Travelers Cas. & Sur., 2010 WL 5017798, at *6) and that equitable remedies

are inappropriate under California law when a legal remedy suffices to make an aggrieved litigant

whole (see Bi-Rite Meat & Provisions Co. v. Redev. Agency of Hawaiian Gardens, 156 Cal.

App. 4th 1419, 1433 n.12 (2007)).  But the very nature of the current situation negates the

availability or adequacy of a legal remedy.

Remember that Partnership challenges the existence of the major default claimed by

BE&K.  Would it have Surety pay off the disputed claim, thus becoming entitled to demand cash

---

    [7]  Interestingly, that contention does not touch at all upon the obligations of the individual
indemnitors, two of whom are not alleged to be members of the limited liability corporate
defendant.  All of the indemnitors are jointly and severally liable under Agreement ¶12.1, so that
any asserted threat to the corporate indemnitor does not vitiate (or attenuate) Surety's right to
pursue all of its rights and potential remedies under the Agreement.  But the legal inadequacy of
the argument itself makes it unnecessary to explore that subject further.

indemnification from Partnership?[8]  Nonsense -- and to conjure up any other potential remedy at law, which by definition would have to hypothesize the possibility of some future money recovery, would leave Surety at risk without the security for which it bargained and that Partnership promised to provide.  In short, nothing stands in the way of specific enforcement of the collateralization provision of the Agreement.

### Conclusion

If this Court had been limited to consideration of the Complaint and Answer alone, as Surety's Rule 12(c) motion would normally have required, Partnership's combination of denials and Rule 8(b)(5) disclaimers in its Answer (whether or not advanced in good faith) would have compelled the denial of that motion -- considerations of improbability and possible lack of credibility would have made no difference.  But that situation changed when Partnership's briefing on the motion revealed that its earlier denial of having received Surety's demands for collateralization had been untrue.

What the foregoing analysis has demonstrated in that light is that Surety's motion for indemnification must be and is denied at this stage,[9] but that its motion seeking the specific performance of the collateral security provision of the Dental Sciences Building project Bond

---

[8]  And just how would that scenario work in light of Partnership's contention that a cash collateralization would cause it irreparable harm?  As mentioned earlier, collateralization at least holds out the prospect of recapture if the claim ultimately proves excessive or even unsupported.

[9]  But see n.5.

must be and is granted.[10]  This action is set for a status hearing at 8:45 a.m. December 6, 2012 to

discuss future proceedings in the case.

_____

Milton I. Shadur
Senior United States District Judge

Date:  November 26, 2012

---

[10]  Such a ruling might also become appropriate hereafter as to the other Bond, but that
remains for the future.