IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES SURETY COMPANY,      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      No. 11 C 7480
                                   )
STEVENS FAMILY LIMITED             )
PARTNERSHIP, THOMAS J. STEVENS,    )
LILLIA STEVENS, MATTHEW S.         )
STEVENS AND EDNA M. HOWARD,        )
                                   )
            Defendants.            )

MEMORANDUM OPINION AND ORDER

     Defendants Stevens Family Limited Partnership, Thomas

Stevens, Lillia Stevens, Matthew S. Stevens and Edna M. Howard

(collectively "Indemnitors"[1]) have filed their Second Amended

Answer & Affirmative Defenses ("ADs") to Surety's First Amended

Complaint ("FAC") that seeks their performance of

collateralization and indemnification.[2]  Most recently Surety has

moved to strike the ADs, and that motion has been fully briefed

---

     [1]     That is the capacity in which they executed the June
18, 2008 General Indemnity Agreement ("Agreement") with United
States Surety Company ("Surety") and with others that Surety
might procure to act as a surety or co-surety or to execute a
bond at Surety's request.  To be more precise, the individual
defendants signed the Agreement as "Indemnitors" while the
limited partnership defendant signed the Agreement as another of
the defined "Principals."  But because every Principal's
undertaking under the Agreement was one of indemnification, this
opinion's collective use of "Indemnitors" to describe all of the
defendants is entirely appropriate.

     [2]     As those pleading captions reflect, both sides have
been compelled to go back to the drawing board for repleading
because of this Court's identification of curable errors in their
earlier pleadings.

by the parties and is ripe for decision. For that purpose this opinion will draw upon, without any need to repeat, this Court's statement of the background facts and its analysis of the Agreement and of the parties' rights and obligations in its November 26, 2012 memorandum opinion and order ("Opinion," 905 F.Supp.2d 854[3]).

Before this second opinion turns to substantive issues, something needs to be said about a purported fundamental premise that Indemnators' counsel impermissibly advance on their clients' behalf. It is inexplicable (and frankly inexcusable) for any lawyers who devote any part of their practice to federal court litigation to continue to cite the now discredited formulation in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) -- see defendants' Response at 5 -- as the standard for federal pleadings. Nearly seven years have elapsed since the Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) that the Conley v. Gibson formulation was overly generous and had outlived its usefulness -- and as every federal practicer must know, two years later Ascroft v. Iqbal, 556 U.S. 662, 678 (2009) repeated and reinforced Twombly's addition of the requirement of "plausibility" to federal pleadings. Counsel ought to realize that such citation of overruled authority can cast a cloud on

_____

[3]     Further citations to the Opinion will simply take the form "Opinion at --," setting out the cited page number but omitting the prefatory "905 F.Supp.2d."

their general credibility.

That aside, however, when indemnitors' ADs are scrutinized through the proper lens of plausibility, they clearly fail to survive. Opinion at 858 explains that California law provides the substantive rules of decision here. And California law recognizes the reality that a surety that puts up its own major money commitment through a bond is entitled to define and enforce the remedies specified in its agreement with the indemnitors on whose liabilities it has had to make good -- a relationship inherently different from that created by the issuance of an insurance contract (see the extended -- and extensive -- analysis in Cates Constr., Inc. v. Talbot Partners, 980 P. 2d. 407, 418-25 (Cal. 1999)). Indeed, the intermediate appellate California decision on which Indemnitors seek to place their principal reliance -- Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., 54 Cal. Rptr. 2d 888, 899 (Cal.App. 1996), decided three years before Cates -- also held that quite unlike the obligation of an insurer to its insured, a surety is not required to give a heightened degree of consideration to the interests of its indemnitor -- there is no fiduciary-like special relationship between those parties.[4]

---

[4] It would be a topsy-turvy legal world in which an earlier intermediate appellate decision would somehow trump a later and thoroughly studied Supreme Court decision. Yet that is how Indemnitors would have their reading of the entire Arntz opinion operate.

In this instance Agreement ¶ 3.1 is unambiguous in vesting sole and unequivocal discretion in Surety as to such enforcement:

> Surety shall have the right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed.

So both Cates and Arntz (as well as a group of other California cases cited in Surety's memoranda that state and apply the same principle) uniformly reject the position that Indemnitors try to promote here.

Indemnitors are not alone in having placed their bet on Arntz as the asserted authority supporting their ADs 1 and 2, each of which asserts that Surety should have undertaken a different course of action other than making good on a bond claim by paying $440,000 in settlement -- and consequently asserts that Surety's handling of the matter amounted to a failure to mitigate its damages.[5] Just as Indemnitors seek to call Arntz to their aid by thrusting a fiduciary-like obligation on Surety, that same approach was advanced by defendant Highland Partnership, Inc. ("Highland") in a recent California District Court case,

---

[5] Indemnitors and their counsel fail to face up to the extraordinary level of irony manifested by those ADs. They blithely ignore the fact that all of the problems that gave rise to the bond claims stem from the facts that their company -- Architectural Specialties Trading Company, Inc., on whose behalf they had gone on the hook personally by entering into the Agreement -- went bust and defaulted on its construction subcontracts, and that Indemnitors themselves did not try to salvage their Company's position by essaying any of the efforts in which  they now claim Surety should have engaged.

4

<u>Travelers Cas. & Surety Co. of Am. v. Highland P'ship, Inc.</u>, 2012 WL 5928139 (S.D. Cal. Nov. 26, 2012).

In <u>Highland P'ship</u> the District Court flatly rejected that position, and the analysis there applies with equal force here.[6] Moreover, <u>Highland P'ship</u> (like this case) dealt with claims settled by the surety (there Travelers) on which Highland (there the indemnitor, like Indemnitors here) sought to second guess its surety on grounds comparable to those asserted in Indemnitors' ADs here.

Thus, after torpedoing the contention that a surety's obligation equates to that of an insurer for purposes of evaluating the implied covenant of good faith and fair dealing (<u>Highland P'ship</u> at *5), the <u>Highland P'ship</u> court went onto analyze that implied covenant in its application to surety agreements (<u>id</u>. at *6) and, after quoting the language of the contract there that -- just like the one here -- vested "sole discretion" in the surety, that court concluded (<u>id</u>. at *7):

---

[6] This Court of course recognizes that the opinion in <u>Highland P'ship</u> granted summary judgment on defendants' Counterclaim, while the issue before this Court is the viability of part of Indemnitors' pleading -- their ADs -- as a matter of law. That however is a distinction without a difference, for Indemnitors have set out their contentions in detail in those ADs, and this Court has credited those factual allegations arguendo, just as a court is required to credit a litigant's version of the facts in opposition to a motion for summary judgment. Hence the evaluation of the defendants' position in <u>Highland P'ship</u> parallels the evaluation of Indemnitors' ADs as a matter of law that this Court is required to make here.

> Pursuant to this paragraph, Travelers argues it was
> given the authority to settle claims against it in its
> sole discretion, and any determination made by
> Travelers was to be binding and conclusive upon
> Defendants. The only precautionary language in the
> paragraph states that Travelers should be indemnified
> for all loss it believed as "necessary or expedient."
> However, even this precautionary language allows
> Travelers to settle claims it deemed necessary <u>or</u>
> expedient, not both. <u>See</u> <u>AIU Ins. Co. v. Super. Ct</u>.
> (1990) 51 Cal.3d 807, 821, 274 Cal.Rptr 820, 799 P.2d
> 1253 ("[T]he mutual intention of the parties at the
> time the contract is formed governs interpretation").
> Thus, because all parties to the Indemnity Agreement
> are sophisticated business people, and the Court will
> not rewrite the parties contract after the fact to
> facilitate a different result, the Court finds the
> implied covenant conflicts with the parties explicit
> agreement. <u>See, e.g</u>., <u>Certain Underwriters at Lloyd's
> of London v. Super.Ct</u>. (2001) 24 Cal.4th 945, 968, 103
> Cal.Rptr.2d 672, 16 P.3d 94 ("[W]e do not rewrite any
> provision of any contract, for any purpose.").[7]

After that discussion, which as already stated applies to this case with at least equal force, <u>Highland P'ship</u> went on to discuss the claims that Travelers as surety had paid, and it then cited <u>Arntz</u> and other California caselaw as holding "[t]o successfully establish a bad faith defense, an indemnitee, such as Defendants, must prove that the surety engaged in 'objectively unreasonable conduct' in handling its obligations under the indemnity agreement" <u>Highland P'ship</u> at *9). And just as <u>Highland P'ship</u> held that the indemnitors there flunked that

_____

[7]    [Footnote by this Court] Indeed, the just-quoted <u>Highland P'ship</u> analysis applies to this case a fortiori. As the earlier-quoted Agreement ¶3.1 states, it vests "sole and absolute discretion" in Surety without hedging it with the possible qualification discussed in the <u>Highland P'ship</u> quotation.

test, the Indemnitors here have struck out for the same reason.

So much, then, for Indemnitors' first two ADs. As for their third AD, which purports to state an estoppel defense, once again the irony of that position has escaped the Indemnitors and their counsel. They attempt to fault Surety for its good faith exercise of its sole and absolute discretion, while totally ignoring the fact that they themselves took no action available to them to deal with the problems that had resulted from their own corporation's contractual defaults (as <u>Matthew</u> 7:3 put it, "And why beholdest thou the mote that is in thy brother's eye, but considerest not the beam that is in thine own eye?"

Conclusion

It is fortuitous that Surety's counsel brought the decision in <u>Highland P'ship</u> to this Court's attention, for it soundly analyzed and applied California law in a manner that, as already stated, applies with equal force here. That has spared this Court any need to reinvent the wheel by separately researching the law in a "foreign" jurisdiction -- California -- where a District Judge who deals with that law day in and day out has already done so. In sum, Surety's motion to strike Indemnitors' ADs [Dkt. 67] is granted.

Milton I. Shadur
Senior United States District Judge

Dated: **January 8, 2014**