# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES SURETY COMPANY**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11 C 7480 |
| **STEVENS FAMILY LIMITED PARTNERSHIP**, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Stevens Family Limited Partnership and individuals Thomas Stevens, Lillia Stevens, Matthew Stevens and Edna Howard (all collectively referred to here as "Indemnitors") have again sought to inject into this action, via an affirmative defense, the issue of good faith and fair dealing on the part of United States Surety Company ("U.S. Surety") in connection with the $440,000 settlement payment that it made after a mediation with BE&K Building Group LLC ("BE&K") (BE&K had been the general contractor for the University of North Carolina at Chapel Hill Dental School Annex Project, and it had let the subcontract for architectural millwork with Indemnitors' company Architectural Specialties Trading Company, Inc. ("Architectural Specialties")). As Indemnitors would have it, U.S. Surety has not met the good faith and fair dealing standard and is therefore precluded from seeking recoupment of its $440,000 outlay from Indemnitors.

---

[1] Another aspect of this litigation is pending before Magistrate Judge Gerry Brown, to whom other pending motions have been referred. Although Judge Brown's ruling on those matters might perhaps impact on the ultimate ruling on the issue dealt with in this opinion, this Court's view is that the advance insight into the matter reflected here will be of value to the litigants.

But Indemnitors' basic problem is that California law, which provides the substantive rules of decision between the litigants under the June 18, 2008 General Indemnity Agreement ("Agreement") between the parties, provides otherwise. Here, stated in brief compass, are the relevant facts that control this litigation:

1. Agreement ¶ 3.1 vests U.S. Surety with the "right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed."

2. When Architectural Specialties entered into its subcontract with BE&K, U.S. Surety issued a bond on its behalf and in favor of BE&K in the amount of $1,251,234.

3. On August 31, 2010 Architectural Specialties notified BE&K that it was going to cease operations. It then failed to comply with U.S. Surety's demands to post collateral as the Agreement required and, after then filing a Chapter 11 bankruptcy case, it notified both BE&K and U.S. Surety that it did not have the funds to complete its' subcontract. BE&K responded with (a) a notice of default under the subcontract on June 30, 2011 and (b) a July 12, 2011 Failure To Cure Default Letter stating that it would be supplementing the incomplete work under the Architectural Specialties Subcontract.

4. Less than a month later BE&K made a bond claim of $439,030 for the incomplete work and added costs, stating that it would use a company

called Nycom to complete the work at a figure some $500,000 higher than the Architectural Specialties contract price. Although both U.S. Surety and Architectural Specialties objected to Nycom as the replacement subcontractor, BE&K promptly entered into a subcontract with Nycom.

5. U.S. Surety filed this action some two months later (on October 21, 2011) seeking both specific performance of the Agreement's collateral deposit provision (Complaint Count I) and indemnification for any claims paid (Complaint Count II). On November 26, 2012 this Court issued a memorandum opinion and order (905 F. Supp. 2d 854) that in part (id. at 858-59) denied the latter component of U.S. Surety's claim because it had not shown that any losses had been incurred at the time the parties had briefed that motion.

6. But later filings have revealed that in September 2012 U.S. Surety and BE&K had engaged in mediation on a claim on the Bond referred to in paragraph 2, and on September 11 of that year U.S. Surety paid BE&K $440,000 to settle its claim.

It is true that under California law "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement" (Carma Developers (Cal.), Inc. v. Marathon, 2 Cal. 4th 342, 371 (Cal. 1992) -- but where the contracting party is a surety, that standard differs from that applicable to an insurer -- as Arntz Contracting Co. v. St. Paul Fire &

Marine Ins. Co., 47 Cal. App. 4th 464, 482-83 (1996) has reconfirmed, "it is not the duty of the surety to protect the principal as if the principal were an insured under an insurance policy."

Indeed, Indemnitors' recent (January 23, 2014) filing of a motion for "leave to amend their Answer to add the Affirmative Defense of breach of the covenant of good faith and fair dealing" is puzzling, for that motion appears to be an attempt to resuscitate a like affirmative defense that this Court has already rejected in its two-weeks-earlier January 8 memorandum opinion and order ("Opinion," 2014 WL 68382). Because the case is currently set for a 9 a.m. March 12, 2014 status hearing and Indemnitors' motion may betoken more than meets the eye, this memorandum order is issued to alert the litigants to this Court's initial reaction to the motion.

It would be an act of supererogation for this Court to repeat what it said in the Opinion, including the Opinion's citation to and quotation from the recent surety -v.- indemnitors opinion in Travelers Cas. & Surety Co. of Am. v. Highland P'ship, Inc., 2012 WL 5928139 (S.D. Cal. Nov. 26, 2012). But because that opinion, issued by a District Judge steeped in California law (as this Court is not, of course), has also set out a first-rate synthesis of the California caselaw that controls such relationships, here is that presentation (id. at *5):

> Although Defendants make a valiant effort to analogize the obligations of a surety to that of an insurer, California courts have consistently held that insurance contracts and surety agreements are inherently different and therefore require a different analysis. *See Cates Constr., Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 47, 86 Cal.Rptr.2d 855, 980 P.2d 407 ("It is firmly established that the insurance policy cases represent a major departure from traditional principles of contract law."). This is based primarily on the fact that where a "liability insurance policy is written for the [financial] protection of the insured . . . a [surety agreement] does not protect the principal by insuring him against liability," it is merely written for the "protection of the motoring public, who may be injured by the principal" *Id.* at 53-55, 86 Cal.Rptr.2d 855, 980 P.2d 407 (stating that while an insurer stands as a fiduciary to the insured, this relationship is not present in surety relations, even

when the parties have disparate bargaining power); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464-483, 54 Cal.Rptr.2d 888 (finding that a surety is not required to give a heightened degree of consideration to the interests of the indemnitor).[2] Therefore, because surety bonding does not give rise to a fiduciary-like special relationship found in traditional two-party insurance contracts, the Court finds Defendants' arguments and cases cited in support thereof unavailing.

That said, it appears to this Court that Indemnitors' proposed affirmative defense, which is really much like a counterclaim, does not satisfy the "plausibility" standard under the Trombly-Iqbal canon that now governs federal claims. This Court will await the March 12 hearing with interest.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 5, 2014

---

[2] [Footnote by this Court] As this Court has previously remarked, it finds the reliance on Arntz contained in Indemnitors' submissions surprising -- although that case ultimately ruled against the surety there because it did not have a good faith belief that its expenditures were "desirable or necessary" (the language of the indemnity agreement there) to protect its interests, the principle that the court in that case applied in reaching that result really supports U.S. Surety's position in this case. By sharp contrast to the ultimate outcome in Arntz on totally different facts, the result reached in the Highland case on a factual matrix highly comparable to the one involved in this case was a resounding victory for the surety there -- and so it too provides strong support for U.S. Surety in this case.